IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. CCB-21-0334 |
| | : | |
| WILSON NUYILA TITA, et al., | : | |
| | : | |
| *Defendants.* | : | |

## DEFENDANT TITA'S MOTION FOR
## JUDGMENT OF ACQUITTAL OR NEW TRIAL

Wilson Nuyila Tita, by and through undersigned counsel, respectfully moves this Court to enter a judgment of acquittal, pursuant to Rule of Criminal Procedure 29(c), or, alternatively, to grant a new trial, pursuant to Federal Rule of Criminal Procedure 33(a). In support of this motion, undersigned counsel submits the following.

## PROCEDURAL BACKGROUND

On March 17, 2022, the government charged Mr. Tita by superseding indictment with (1) Conspiracy, 18 U.S.C. § 371 (Count 1); Violating the Arms Export Control Act, 22 U.S.C. § 2778 (Count 2); Violating the Export Control Reform Act, 50 U.S.C. § 4819 (Count 3); Transportation of a Firearm with an Obliterated Serial Number, 18 U.S.C. § 922(k) (Count 4); and Smuggling, 18 U.S.C. § 554(a) (Count 5). A jury acquitted Mr. Tita of Count 2 and Count 3.

## LEGAL STANDARDS

### I. MOTION FOR A JUDGMENT OF ACQUITTAL

Federal Rule of Criminal Procedure 29 requires a court to enter a judgment of acquittal where, "as a matter of law[,] the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." *United States v. Alvarez*, 351 F.3d 126, 129 (4th Cir. 2003) (quoting *Smalis v. Pennsylvania*, 476 U.S. 140, 144 (1986)); *see* Fed. R. Crim. P. 29(a) (providing

1

that a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction"); *United States v. Arthur*, No. 17-CR-253-PWG-4, 2022 WL 294292, at *1 (D. Md. Feb. 1, 2022) (citing Fed. R. Crim. P. 29(a)). Accordingly, a court can sustain a jury verdict *only* if, in viewing the totality of the evidence, *see United States v. Osborne*, 514 F.3d 377, 387 (4th Cir. 2008), in a light most favorable to the government, *see Evans v. United States*, 504 U.S. 255, 257 (1992); *United States v. Hickman*, 626 F.3d 756, 763 (4th Cir. 2010) (quoting *United States v. Bynum*, 604 F.3d 161, 166 (4th Cir. 2010)); *United States v. Arthur*, No. 17-CR-253-PWG-4, 2022 WL 294292, at *1 (D. Md. Feb. 1, 2022) (citation omitted), and drawing all *reasonable* inferences and credibility choices in favor of the jury's verdict,[1] *see United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993) (emphasis added), the court determines that there is *substantial* evidence to support that verdict, *see Evans*, 504 U.S. at 257; *Hickman*, 626 F.3d at 763 (citation omitted) (emphasis added). The Fourth Circuit has defined "substantial evidence" as "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Young*, 609 F.3d 348, 355 (4th Cir. 2010) (quoting *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)); *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006) (citation omitted); *United States v. Arthur*, No. 17-CR-253-PWG-4, 2022 WL 294292, at *1 (D. Md. Feb. 1, 2022) (citations omitted); *see also United States v. Millender*, 970 F.3d 523, 528 (4th Cir. 2020). Evidence is not substantial where it offers only mere speculation of guilt, *see, e.g.*, *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982); *Leos-Quijada*, 107 F.3d at 794, or supports a

---

[1] An inference is not reasonable if it is mere speculation and conjecture. *See United States v. Jones*, 713 F. 3d, 336 (7th Cir. 2013); *United States v. Leos-Quijada*, 107 F.3d 786, 794 (10th Cir. 1997). Moreover, a conviction cannot be sustained if it was reached by "piling inference upon inference." *Id.* (citations omitted); *United States v. Crounsset*, 403 F. Supp. 2d 475, 479 (E.D.Va. 2005) (quoting *Evans-Smith v. Taylor*, 19 F.3d 899, 908 n. 22. (4th Cir. 1994)) ("[T]he fact finder is not entitled to make 'leaps of logic.'").

2

near equal persuasive inference of both innocence and guilt, *see United States v. Caseer*, 399 F.3d 828, 840 (6th Cir. 2005); *United States v. Makriannis*, 774 F.2d 1164 (6th Cir. 1985); *United States v. Fearn*, 589 F.2d 1316, 1321 (7th Cir. 1978); *United States v. Ortiz*, 445 F.2d 1100 (10th Cir. 1971); *Hammond v. United States*, 127 F.2d 752 (D.C. Cir. 1942).

II.     MOTION FOR A NEW TRIAL

Federal Rule of Criminal Procedure 33(a) provides that, upon a defendant's motion, a court "may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). A district court has broad discretion to order a new trial. *See United States v. Ruiz*, 105 F.3d 1492, 1501 (1st Cir. 1997); *United States v. Bennett*, 956 F.2d 1476, 1481 (8th Cir. 1992); *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992).

Courts have granted a new trial in various instances, such as where there was a deprivation of a constitutional right affecting trial, *see United States v. Arango*, 670 F.Supp. 1558 (S.D. Fla. 1987), *aff'd* 853 F.2d 818 (1988); *United States v. Ostrer*, 422 F.Supp. 93 (S.D.N.Y. 1976); where an error, "in any reasonable likelihood, [could] have affected the judgment of the jury,"[2] *United States v. Ibrahim*, No. CR-11-0811 EMC, 2013 WL 5434156, at *2 (N.D. Cal. Sept. 27, 2013) (quoting *United States v. Butler*, 567 F.2d 885, 891 (9th Cir. 1978)), or where there was insufficient evidence to support the verdict,[3] *see United States v. Willis*, 277 F.3d 1026, 1030-31 (8th Cir. 2002) (citation omitted).

---

[2] As it relates to jury instructions, the operative question is whether the "instructions, taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented" in the case. *United States v. Mohammed*, No. CRIM. 13-250 SRN/JJK, 2014 WL 3908614, at *1 (D. Minn. Aug. 11, 2014) (citation omitted).

[3] For court to grant new trial, evidence must preponderate heavily against the verdict to the extent that it would be miscarriage of justice to let it stand. *See United States v. Walker*, 899 F.Supp. 14 (D.D.C. 1995), *aff'd* 99 F.3d 439, 321 (D.C. Cir. 1995). Unlike a motion for a judgment of acquittal, when ruling on a motion for a new trial, a court is "not obliged to view the evidence in the light most favorable to the verdict, and it is . . . to weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000); *see United States v. Huerta-Orozco*, 272 F.3d 561, 565 (8th Cir. 2001) (citation omitted).

**ARGUMENT**

I.     **CONSPIRACY, 18 U.S.C. § 371 (COUNT 1)**

The Court instructed the jury on conspiracy, in part, as follows: "What is necessary is that the defendant participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of these unlawful ends. However, before you may consider the statements or acts of a coconspirator in deciding the issue of a defendant's guilt, as I've said you do have to determine the existence and in furtherance of the unlawful scheme." The Court instructed the jury that the unlawful acts were a violation of the Arms Control Export Act, a violation of the Export Control Reform Act, Smuggling, or Transporting a Firearm with an Obliterated Serial Number. Mr. Tita was found not guilty of violating the Arms Control Export Act and the Export Control Reform Act.

    A.     **Mr. Tita Did Not Knowingly Agree to Violate the Law.[4]**

To establish a conspiracy in violation of 18 U.S.C. § 371 against Mr. Tita, the government must establish, beyond a reasonable doubt, that, during the existence of the conspiracy, Mr. Tita deliberately joined the conspiracy, knowing the unlawful purpose of the agreement. *See Smith v. United States*, 568 U.S. 106, 110 (2013) (citing *United States v. Hirsch*, 100 U.S. 33, 34 (1879)); *United States v. Millender*, 970 F.3d 523, 528 (4th Cir. 2020); *Alston v. Maryland*, No. CIV.A. JKB-11-929, 2011 WL 5118443, at *8 (D. Md. Oct. 26, 2011) (asserting that, to be convicted of conspiracy, the defendant must have a specific intent to commit the criminal offense which is the object of the conspiracy). The government failed to present evidence against Mr. Tita that was sufficient to prove beyond a reasonable doubt that Mr. Tita knowingly agreed to violate the law. The case before the Court is unlike that of *United States v. Zambrano*, 752 F. App'x. 775 (11th

---

[4] The arguments in Sections IA and IB apply to the respective substantive charges as well.

4

Cir. 2018), where the defendant and co-conspirators took great pains to conceal their identities when purchasing and shipping firearms, the firearms were chopped up and later shipped in order to conceal items, and the defendant had control over a storage unit for hiding disassembled firearms and equipment used to chop up firearms and obliterate the serial numbers. Here, the government presented no evidence that Mr. Tita knew about, engaged in, or meaningfully observed the removal of serial numbers, participated in wrapping or loading the packages, or had control over the basement, garage, or equipment used obliterate serial numbers. Instead, as discussed in detail below, the evidence at trial readily showed that Mr. Tita believed that what he and his peers were doing was lawful.

While others may have agreed to violate the law, their actions and statements cannot be imputed to Mr. Tita for purposes of establishing his membership in a conspiracy; only Mr. Tita's acts or statements could be used for that purpose. *See United States v. Loscalzo*, 18 F.3d 374, 383 (7th Cir. 1994); *see also United States v. Fleschner*, 98 F.3d 155, 160 (4th Cir. 1996) (approvingly quoting a jury instruction providing that a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some object or purpose of a conspiracy, does not thereby become a conspirator); *United States v. Heater*, 63 F.3d 311, 326 (4th Cir. 1995) (same). Accordingly, because the government failed to present sufficient evidence to show that Mr. Tita knowingly agreed to violate the law, the Court must vacate Count 1.

    **B.**   **The Government Failed to Prove the Requisite *Mens Rea*.**

The government failed to present evidence against Mr. Tita that would be sufficient to prove beyond a reasonable doubt that he acted with the requisite *mens rea*. "[I]n order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the [g]overnment

must prove at least the degree of criminal intent necessary for the substantive offense itself." *United States v. Feola*, 420 U.S. 671, 686 (1975). The government failed to do so here.

### 1. Smuggling

For purposes of 18 U.S.C. § 554(a), a defendant must know of the unlawful nature of the exportation. *See, e.g.*, *United States v. Cardenas*, 626 F. App'x. 441, 443 (5th Cir. 2015); *United States v. Chi Tong Kuok*, 671 F.2d 931, 944 (9th Cir. 2012) (interpreting second clause of Section 554 as requiring knowledge that item "was intended for export contrary to U.S. law").

The government failed to present any evidence at trial that Mr. Tita knew that his conduct was unlawful. In an attempt to prove knowledge of unlawfulness, the government significantly relied on the testimony of Alambi Muma, who implicated Mr. Tita only through general statements about the group, such as, "[W]e didn't want the public to know . . . [b]ecause to some extent we understand that if they know, they're going to stop us and it's illegal." Muma Test., 18, April 29, 2022. However, Mr. Muma's subsequent testimony discredited his own sweeping statements. For instance, Mr. Muma testified that it was only when they received notice that the container was being rerouted back to the United States that he began to think "maybe this is something that is going to get us in trouble." Muma Test., 80, April 29, 2022. During cross-examination, Mr. Muma admitted that he "didn't know that shipping weapons overseas in the United States without proper documentation was a crime." *Id*.

Additionally, Eric Fru Nji testified that he did not know the group was shipping guns and ammunition at all; instead, he stated that he believed their efforts were solely aimed at providing humanitarian aid. Moreover, the government failed to produce evidence that there was any sort of communication among group members as a whole, or to Mr. Tita specifically, that they lacked a requisite shipping license or were operating in a manner in violation of Section 922(k). Instead,

6

"[i]t would only be speculation, unsupported by evidence, that any discussion of the [unlawful nature] was ever discussed in [Mr. Tita's] presence." *MacCloskey*, 682 F.2d at 473; *see United States v. Nora*, No. 18-31078 at 1 (5th Cir. Feb. 24, 2021) (concluding that mere exposure or blind involvement in unlawful activity and evidence that "everybody knew" of the unlawful activity is not sufficient to constitute willfulness). In fact, each time Mr. Tita asked Tamufor St. Michael about the legality of their actions, Mr. Tita received assurances that all the required licenses were in hand and that nothing about the group's conduct was unlawful. Additionally, many characteristics often associated with illicit operations were absent here: no stolen items were involved in the transactions, the group members did not pay exponentially high prices for the items, and the nature of Mr. Tita's activities was open and notorious (e.g., Mr. Tita used his personal Cash App account, labeled transactions using words like "ammo," used WhatsApp messaging to communicate, and distributed bylaws about group activities).[5]

### 2. Transporting a Firearm with an Obliterated Serial Number

To violate 18 U.S.C. § 922(k), the defendant "must know of the alteration" to the weapon's serial number at the time of the possession. *United States v. Sullivan*, 455 F.3d 248, 261 (4th Cir. 2006). Despite what was required to find a violation under 18 U.S.C. § 922(k), the government did not prove beyond a reasonable doubt that Mr. Tita knew the serial numbers were removed from the weapons being transported. *See United States v. Sullivan*, 455 F.3d 248, 261 (4th Cir. 2006) ("The defendant must know of the alteration.").

The only evidence related to the alteration of serial numbers presented at trial was the testimony of Alambi Muma. At trial, Mr. Muma testified that he obliterated the serial numbers and that he did not know if anyone else performed that task. Mr. Muma noted that, when Tamufor St.

---

[5] Any seemingly furtive act of Mr. Tita's can be readily explained by the fear that either he or additional loved ones in Cameroon would be harmed for their activities in opposition of the Cameroonian government.

7

Michael assigned him to be "in charge of the filing" of serial numbers, no one else was listening.[6] Mr. Muma also testified that he believed that Mr. St. Michael decided to have Mr. Muma file the serial numbers in order to prevent Cameroonian foot soldiers from finding the weapons and then tracing the weapons back to them.

While "[k]nowledge of defacement of the serial number may be inferred where the defendant has possessed the gun under conditions under which an ordinary man would have inspected the pistol and discovered the absence of a serial number," *United States v. Norfleet*, 401 F. App'x. 833, 835-36 (4th Cir. 2010) (citation omitted); *see also United States v. Johnson*, 381 F.3d 506, 508-11 (5th Cir. 2004) ("[T]he fact of that previous possession contributes nothing, even by inference, to the jury's conclusion."); *id.* ("The same must be said of any inference that the jury might draw from its awareness that Johnson was immersed in the gang or dope culture that pervaded those areas of Clarksdale where he lived and frequented, or that guns . . . were familiar tools of the trade in that culture."), the government did not offer any evidence that Mr. Tita regularly carried and possessed any of the weapons. *Cf. United States v. Frett*, No. 3:18-CR-0037, 2021 WL 42051, at *4 (D.V.I. Jan. 5, 2021). In fact, some of the wrapped and loaded packages did not contain weapons with obliterated serial numbers and the government never presented any evidence to suggest Mr. Tita knew what was in the sealed compressors or the wrapped packages, that Mr. Tita participated in the wrapping or loading of the packages, or that Mr. Tita was involved in the obliteration of serial numbers.

The government's evidence established that Mr. Muma—and only Mr. Muma—handled, wrapped, and loaded the weapons, and obliterated serial numbers. Under such circumstances, "the

---

[6] Mr. Muma further testified that the process of removing serial numbers only took up to five (5) minutes per weapon.

8

Court cannot conclude that the inference that [Mr. Tita] knew about the [weapons'] missing serial number[s] is one a rational jury could make." *Id.* (citation omitted).

### C. A *Pinkerton* Instruction Was Improper.

In this case, the Court provided the jury a *Pinkerton* instruction over the objection of counsel. A *Pinkerton* instruction is improper where, *inter alia*, (a) it is inconsistent with a statute that requires a showing that the defendant had knowledge that the co-conspirators intended to commit a specific crime charged, as opposed to any foreseeable crime committed as result of complicity, *see State v. Stein*, 144 Wash. 2d 236, 27 P.3d 184 (2001); (b) the defendant was not a member of the conspiracy at the time of the substantive offense, *see United States v. Pinkerton*, 328 U.S. 640, 647-48 (1946); or (c) the conspiracy was not proven beyond a reasonable doubt, *see id.* Because the Section 554(a) charge required a showing that the defendant had knowledge that the alleged co-conspirators intended to violate Section 922(k) and the government failed to prove that Mr. Tita was a member to a conspiracy, a *Pinkerton* instruction was improperly presented to the jury.

## II. TRANSPORTATION OF A FIREARM WITH AN OBLITERATED SERIAL NUMBER, 18 U.S.C. § 922(K) (COUNT 4)

To establish a violation of 18 U.S.C 922(k), the government must prove, beyond a reasonable doubt, that the defendant: (1) knowingly possessed the firearm; and (2) knew that the serial number of the possessed firearm had been removed, obliterated, or altered. *See United States v. Santiago*, 344 F. App'x. 847, 851 (4th Cir. 2009) (citations omitted).

### A. The Government Failed to Prove that Mr. Tita Knowingly Possess a Firearm.

In relevant part, "firearm" is defined under 18 U.S.C. § 921(a)(3) as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." Courts have recognized that even where a weapon is

9

originally designed to fire a projectile, such weapon could be "so redesigned or modified to remove it from Section 921(a)(3)'s coverage." *United States v. Rivera*, 415 F.3d 284, 286-87 (2d Cir. 2005); *see United States v. Davis*, 668 F.3d 576, 577 (8th Cir. 2012); *United States v. Thomas*, No. CR 17-194 (RDM), 2019 WL 4095569, at *4-6 (D.D.C. Aug. 29, 2019); *United States v. Dotson*, 712 F.3d 369, 371-72 (7th Cir. 2013); *see also United States v. Williams*, 445 F.3d 724, 732 (4th Cir. 2006) ("Under Title 18, a firearm rendered permanently inoperable is exempted from the class of firearms banned under the statute."). In its jury instruction, the Court defined "firearm" for purposes of Section 921(a)(3) as "any weapon that will or is designed to or may be readily converted to expel a projectile by the action of an explosive, something that can shoot a bullet." In this case, the government did not provide any evidence at trial that any of the items exported, including the items with allegedly obliterated serial numbers, "will or is designed to or may be readily converted to expel a projectile by the action of an explosive." Absent such proof, the government did not prove beyond a reasonable doubt that any of the exported items were, in fact, "firearms."

      **B.**    **The Government Failed to Prove that Mr. Tita Knew Serial Numbers Were Removed.**[7]

There was insufficient evidence that Mr. Tita knew the serial numbers were removed from the items—even when assessing Mr. Tita's conduct under "willful blindness." In this case, the Court gave the jury a "willful blindness" instruction as to Count 4. In *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769, 131 S. Ct. 2060, 2070 (2011), the Supreme Court held that willful blindness has two elements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take "deliberate actions" or "active steps" to avoid learning of that fact.

---

[7] The arguments set forth in Section IB are incorporated here by reference.

Here, the government failed to present any evidence that Mr. Tita subjectively believed that there was a high probability that the serial numbers were obliterated or that he took "deliberate actions" or "active steps" to avoid learning of the obliterated serial numbers. Indeed, mere exposure or blind involvement in unlawful activity and evidence that "everybody knew" of the unlawful activity is not sufficient to constitute willfulness, even when the unlawful activity is inherently suspicious. *See United States v. Nora*, 988 F.3d 823, 832 (5th Cir. 2021).

Further, because the government failed to put on sufficient evidence to indicate a willful blindness on the part of Mr. Tita, providing the jury with a willful blindness instruction on Count 4 prejudiced him, as the instruction was provided despite Mr. Muma's general and confusing statements about who was involved in and knew about each task and suggested Mr. Tita could be found to have knowledge without the government making a showing of proof beyond a reasonable doubt. Because there was not "overwhelming evidence of [Mr. Tita's] actual knowledge, the erroneous instruction on willful blindness is not harmless. *See United States v. Fofanah*, 765 F.3d 141, 145 (2d Cir. 2014) (citation omitted).

### III. SMUGGLING, 18 U.S.C. § 554(A) (COUNT 5)[8]

At trial, the government failed to present sufficient evidence against Mr. Tita that would be sufficient to prove beyond a reasonable doubt that Mr. Tita acted with the requisite *mens rea*. For purposes of 18 U.S.C. § 554(a), a defendant must know of the unlawful nature of the exportation. *See, e.g.*, *United States v. Cardenas*, 626 F. App'x. 441, 443 (5th Cir. 2015); *Chi Tong Kuok*, 671 F.2d at 944 (interpreting second clause of Section 554 as requiring knowledge that item "was intended for export contrary to U.S. law"); *United States v. Bernardino*, 444 F. App'x. 73, 74 (5th Cir. 2011) (determining that Section 554 required a defendant to "know that he was dealing

---

[8] Where applicable, the arguments related to the application of Section 922(k) and Section 554(a) discussed elsewhere are incorporated here by reference.

11

with weapons and ammunition that were intended for export, and that their exportation would be illegal"); *United States v. Galimah*, No. CRIM. 12-214 ADM/JJG, 2013 WL 1408635, at *4-5 (D. Minn. Apr. 8, 2013).

The superseding indictment provided, in relevant part, that Mr. Tita "did knowingly export and send, and attempt to export and send from the United States to Nigeria any merchandise, article, or object contrary to any law or regulation of the United States, and did knowingly receive, conceal, buy, sells (sic), and in any manner facilitate the transportation, concealment, and sale of such merchandise, article or object, prior to exportation. . . ."

As to this count, the Court instructed the jury in part, that, to find that a defendant violated Section 554(a), it must find that the respective defendant "knowingly exported and sent or attempted to send from the United States any item, firearms, ammunition, magazines or scopes identified in Count Five [and that] the exportation of the item was contrary to any law or regulation of the United States." The Court went on to state that exportation contrary to law would include exportation in violation of the Arms Export Control Act, exportation in violation of the Export Control Reform Act, or exportation of items containing or related to obliterated serial numbers. The jury acquitted Mr. Tita on the alleged violations of the Arms Export Control Act and the Export Control Reform Act; thus, the jury must have relied on an alleged violation of Section 922(k) for rendering a guilty verdict as to Count 5. Because the government failed to put on sufficient evidence to sustain a conviction under Section 922(k), both Counts 4 and 5 must be vacated.

**IV. THE JURY DID NOT UNANIMOUSLY AGREE ON THE ELEMENTS OF THE OFFENSE FOR COUNTS 1 AND 5**

The Sixth Amendment to the United States Constitution and Federal Rule of Criminal Procedure 31(a) require that a jury verdict is unanimous as to the elements of the offense. *See*

*Ramos v. Louisiana*, 140 S. Ct. 1390, 1391, 206 L. Ed. 2d 583 (2020); *United States v. Creech*, 408 F.3d 264, 268 (5th Cir. 2005) (citing *Richardson v. United States*, 526 U.S. 813, 817 (1999)). Where a jury could find that a defendant was guilty on a single count under multiple theories of liability, a specific unanimity instruction is constitutionally required. *See United States v. Holley*, 942 F.2d 916, 926 (5th Cir. 1991) (citation omitted); *see also Creech*, 408 F.3d at 268 (citation omitted) (providing that a general unanimity "instruction is insufficient if 'there exists a genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts'"); *United States v. Brown*, 202 F.3d 691, 700 (4th Cir. 2000) (concluding that omission of a unanimity instruction was not harmless).

Here, the Court declined counsel's requests to instruct the jury that it must unanimously agree regarding which of the multiple objects charged was proven beyond a reasonable doubt. Mr. Tita was convicted of a multiple object conspiracy. The jury was not asked to specify which object it found to support the conviction, and no special verdict form setting out the object agreed upon was presented. Because the jury could have been split regarding the object of the conspiracy, rather than unanimous, Mr. Tita's right to a unanimous verdict was violated.

## V.     18 U.S.C. § 922(k) VIOLATES THE SECOND AMENDMENT

The Second Amendment declares in clear terms that "the right of the people to keep and bear Arms[] *shall not* be infringed." U.S. Const. amend. II (emphasis added). Recently, in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court reconfigured the analytical structure for assessing whether a government action violates the "individual right to keep and bear arms," *Heller*, 554 U.S. at 595. In striking down a long-standing state law that required individuals applying for a concealed-carry license to make a showing of "proper cause," the Supreme Court held that, "[w]hen the Second Amendment's plain text covers

13

an individual's conduct," as it does in this case, "the Constitution presumptively protects that conduct[, and] the government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. 2111. No such historical tradition of firearm regulation exists in this case, and, therefore, Counts 1, 4, and 5 must be vacated.

At its ratification, the Second Amendment represented "a guarantee of the right to buy, sell[,] and manufacture arms" in direct rejection to Great Britain's proposal that "the Arms of all the People should be taken away," David B. Kopel, *Does the Second Amendment Protect Firearms Commerce?*, 127 Harv. L. Rev. F. 230, 235-36 (2014) (footnotes omitted), and its efforts to effectuate such proposal via embargo and so on, *see, e.g.*, *id.* at 234; *Boston Gazette, and Country Journal*, Oct. 17, 1768, at 2. col. 3. In light of the individual's interest in protection against government interference, it naturally follows that serial numbers were not required to be included on individuals' arms; serial numbers did not even exist.

More generally, to ensure that Second Amendment guarantees are effectuated in full, courts have consistently held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons," *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (invalidating a law restricting handgun possession in the home); *see, e.g.*, *Bruen*, 142 S. Ct. 2111 (holding that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home); *In the Matter of William Rounds*, No. 1533, Sept. Term, 2021, 2022 WL 2398705, at *1 (Md. Ct. Spec. App. July 1, 2022) (applying the *Bruen* analysis to invalidate the "good and substantial reason" exception to a law that otherwise prohibits the wearing, carrying, or transporting of a handgun), and the purchase, sale, and transfer of firearms are protected under the Second Amendment, *see, e.g.*, *Jones v. Bonta*, 34 F.4th 704, 715-16 (9th Cir. 2022) (citing

cases) (applying the *Bruen* analysis to determine that Second Amendment right to bear arms was irreparably harmed as a result of a statute barring sale of semiautomatic rifles to individuals between ages of 18 and 21 unless they were law enforcement officers or active-duty military servicemembers, despite the law permitting them to obtain firearms through family transfers and to use such weapons at shooting ranges). Indeed, the right to keep and bear arms would be meaningless and contrary to its own historical underpinnings if it did not also include the right to obtain or transport arms. *See Heller*, 554 U.S. at 608, 614, 629 (citing *Andrews v. State*, 50 Tenn. 165, 178 (Tenn. 1871)); *Bonta*, 34 F.4th at 716 ("[W]ithout the right to obtain arms, the right to keep and bear arms would be meaningless."); *see also id.* ("There comes a point . . . at which the regulation of action intimately and unavoidably connected with [a right] is a regulation of [the right] itself." (citing *Luis v. United States*, 578 U.S. 5 (2016) (Thomas, J., concurring in the judgment) (quoting *Hill v. Colorado*, 530 U.S. 703, 745 (2000) (Scalia, J., dissenting)))). Section 922(k) effectively regulates an individual's right to possess, carry, and obtain arms; in order to procure a firearm, most individuals must venture out to purchase one, as opposed to manufacturing one. In practical terms, one cannot own a gun without purchasing or otherwise obtaining it outside the home and carrying it in public. Under no circumstances can Section 922(k) be deemed valid under the Second Amendment.

  Because Section 922(k) is unconstitutional, the general verdict rendered in this case must be reversed on the remaining counts. A general verdict must be reversed when it is possible that the jury rested its guilty verdict upon a legally infirm ground. *See generally Williams v. State of N. Carolina*, 317 U.S. 287, 292 (1942) ("[T]he verdict of the jury for all we know may have been rendered on that [unconstitutional] ground alone, since it did not specify the basis on which it rested. . . ."); *Stromberg v. California*, 283 U.S. 359 (1931); *Yates v. United States*, 354 U.S. 298

(1957) (overturning a conspiracy conviction where one of the two objects of a single-count conspiracy indictment was barred by the statute of limitations and thus legally invalid; providing that, "[i]n these circumstances we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not another, and it is impossible to tell which ground the jury selected"), *overruled on other grounds*, *Burks v. United States*, 437 U.S. 1, 98 (1978); *see also Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 313 (4th Cir. 2012) (citing cases) ("The Supreme Court has recognized that when a jury issues a general verdict on multiple theories of liability and one of those theories is overturned on appeal, the entire verdict falls."); *Flowers v. Tandy Corp.*, 773 F.2d 585, 591 (4th Cir. 1985) ("Our rule is that because of the impossibility of knowing but what the jury's verdict rested on the legal erroneous theory, such a general verdict may not stand as a basis for judgment."). Relatedly, a court must set aside a general verdict on a multi-object conspiracy where one or more of the objects was legally invalid even though the defendant was convicted of a substantive count corresponding to a legally valid object. *See United States v. Hughes*, 310 F.3d 557, 561 (7th Cir. 2002) ("[W]hen several different crimes are the object of a single conspiracy, a jury possibly could find a defendant guilty of conspiracy even though the jurors do not agree on which crime was the object of the conspiracy."); *United States v. Palazzolo*, 71 F.3d 1233, 1237 (6th Cir. 1995); *United States v. DeLuca*, 692 F.2d 1277, 1281 (9th Cir. 1983); *see also United States v. Marshall*, 75 F.3d 1097, 1111 (7th Cir. 1996) (asserting that, when more than one charge is included in a single count, defendants suffer "improper notice of the charges against [them], prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from a less than

16

unanimous verdict as to each separate offense"). In light of the argument that Section 922(k) violates the Second Amendment, the guilty verdict on Counts 1 and 5 cannot stand.

## CONCLUSION

For the foregoing reasons, the reasons set forth in co-defendant motions and memoranda, and any other reasons that the Court deems appropriate, the Court should enter a judgment of acquittal for the remaining offenses charged against Wilson Tita in the superseding indictment, or, alternatively, grant him a new trial on those counts.

Respectfully submitted,

_____/s/_____
David Benowitz
Bar # 17672
*Counsel for Wilson Nuyila Tita*
Price Benowitz LLP
409 7th Street, NW, Suite 200
Washington, DC 20004
O: (202) 417-6000
M: (202) 271-5249
F: (202) 664-1331
David@PriceBenowitz.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2022, Defendant Wilson Nuyila Tita's Renewed Motion for a Judgment of Acquittal or Motion for a New Trial was served via CM/ECF on the parties in this matter.

_____/s/_____
David Benowitz