IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 21-cr-0334-RDB-1 |
| | : | |
| WILSON NUYILA TITA, | : | |
| | : | |
| *Defendant.* | : | |

### DEFENDANT TITA'S SUPPLEMENTAL REPLY

Wilson Nuyila Tita, by and through undersigned counsel, files this supplemental reply to the government's supplemental response in opposition and submits the following in support, in addition to reasons set forth in co-defendants' arguments.

**I.     APPLICATION OF SISTER COURT'S HOLDING IN *PRICE***

In *United States v. Price*, No. 2:22-CR-00097 (S.D. W. Va. Oct. 12, 2022), the District Court held that 18 U.S.C. § 922(k) is unconstitutional under the analytical framework announced in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The holding in *Price* is consistent with other post-*Bruen* cases, is persuasive authority, and is directly on point.

Unlike in *United States v. Marzzarella*, 614 F.3d 85, 94 (3d Cir. 2010), which the government relies on, the *Price* Court applies the operative Second Amendment analytical framework set forth in *Bruen*. Under the *Bruen* analysis, there is a meaningful distinction between marked and unmarked firearms, despite the government's contrary argument.

The government further claims Section 922(k) is a commercial regulation. The *Price* Court specifically held that Section 922(k) "is not a commercial regulation." *Price*, No. 2:22-CR-00097, at *3. For the reasons set forth in *Price*, No. 2:22-CR-00097, at *3, and in current and previous filings, Mr. Tita agrees.

The government also claims, incorrectly, that *Price* is not appliable here because different conduct, namely, intra-state possession, and a different clause was at play. However, it is clear that the holding in *Price* applies to Section 922(k) as a whole.[1] *See Price*, No. 2:22-CR-00097, at *2.

However, even if this Court were to limit *Price*'s holding to the second clause of Section 922(k), the conduct regulated under both clauses is possession, as carrying, transporting, or receiving are simply proxies for and inextricably connected to possession. *See, e.g.*, *Bruen*, 142 S. Ct. 2111 (holding that the Second Amendment protects the right to carry outside the home); *D.C. v. Heller*, 554 U.S. 570, 582-86, 608, 614, 629 (2008) (citation omitted) (concluding that "to bear" for purposes of the Second Amendment means "to carry"). To this point, "by requiring serial numbers and 'channeling the sales of firearms through federally licensed dealers,' who keep a record of those sales, the Gun Control Act on the whole helps to keep firearms out of the hands of 'individuals whose possession of them would be contrary to the public interest.'" *Price*, No. 2:22-CR-00097, at *4 (quoting *United States v. Marzzarella*, 595 F. Supp. 2d 596, 602 (W.D. Pa. 2009); and then quoting *Huddleston v. United States*, 415 U.S. 814, 824 (1974)).

Additionally, the government fails to conjure a meaningful distinction between this case and *Price*, as both clauses of Section 922(k) require interstate or foreign conduct at some point. Thus, the conduct in *Price* was not, as the government claims, merely intra-state possession.

The government further argues that it has created a more comprehensive record than the government in *Price*; however, in both instances, the government relied on the same arguments

---

[1] When delving into its Second Amendment analysis, the *Price* Court wrote, "Section 922(k) states, *in pertinent part*, [i]t shall be unlawful for any person knowingly to transport . . . in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess . . . any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce." *Id.* (emphasis added) (internal marks in original).

and cases when reaching for a relevant historical analogue. *See Price*, No. 2:22-cr-00097-1, ECF No. 17. Accordingly, in both cases, in the absence of a meaningful historical analogue, the government failed to establish that Section 922(k) is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

Because Section 922(k) is unconstitutional, the general verdict on the remaining counts must be set aside because (i) it is possible that the guilty verdicts rested upon a legally infirm ground and (ii) this is a multi-object conspiracy case where two of the objects are legally invalid.

## II.    CONSPIRACY COUNT

The government failed to prove each element of a conspiracy. The government failed to prove Mr. Tita was part of any agreement to achieve any unlawful purpose. Additionally, to prove a conspiracy, the government must prove that the defendant acted with the same *mens rea* as that required to prove a substantive count of the unlawful purpose. The government failed to prove the requisite *mens rea* for each count, including the counts of which Mr. Tita was acquitted.

Respectfully submitted,
_____/s/_____
David Benowitz
Bar # 17672
*Counsel for Wilson Nuyila Tita*
Price Benowitz LLP
409 7th Street, NW, Suite 200
Washington, DC 20004
O: (202) 417-6000
M: (202) 271-5249
F: (202) 664-1331
David@PriceBenowitz.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2022, a copy of Defendant Wilson Nuyila Tita's Supplemental Reply has been served via CM/ECF on the parties in this matter.

_____/s/_____
David Benowitz