**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
|  | * |  |
| **UNITED STATES OF AMERICA** | * |  |
| v. | * | **CRIMINAL NO.  RDB-21-0334** |
| **WILSON NUYILA TITA,** *et al* | * |  |
| **Defendants.** | * |  |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendants Wilson Tita, Eric Nji, and Wilson Fonguh (collectively "Defendants") were charged in a five-count Superseding Indictment alleging Conspiracy (18 U.S.C. § 371) (Count 1), Violation of the Arms Export Control Act (22 U.S.C. § 2778) (Count 2), Violation of the Export Control Reform Act (50 U.S.C. §§ 4819) (Count 3), Transportation of Firearm with Obliterated Serial Number (18 U.S.C. § 922(k)) (Count 4), and Smuggling (18 U.S.C. § 554(a)) (Count 5) as a result of unlawful exportation of guns and ammunition from the United States to Nigeria with an end destination of Cameroon.  (Superseding Indictment, ECF No. 44.) After a ten-day jury trial before Judge Blake of this Court, the Defendants were found guilty of Counts 1, 4, and 5, and were found not guilty of Counts 2 and 3. (ECF No. 108.)

Now pending are the Defendants' post-trial motions which seek various alternative relief, including dismissal of their convictions, judgments of acquittal, and/or a new trial. (ECF Nos. 122, 123, 126, 139.) [1]  The Court has considered the Government's Oppositions (ECF Nos. 143, 144), the Defendants' Replies (ECF No. 147, 148), and supplemental briefing (ECF

---

[1] This case was reassigned to the undersigned on October 14, 2022.

No. 149, 151, 152). This Court held a hearing for oral arguments on December 16, 2022. For the reasons explained on the record and reiterated below, Defendants' Motions (ECF Nos. 122, 123, and 126) are **DENIED**. More specifically, the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 213 L. Ed. 2d 387, 142 S. Ct. 2111 (2022), does not render 18 U.S.C. § 922(k) (Count 4) unconstitutional and dismissal on that basis is therefore unwarranted. Further, the Government provided sufficient evidence to support the Defendants' guilty verdicts, testimony from Defendants' expert and from Tse Ernst Bangarie were properly excluded, and Judge Blake appropriately administered willful blindness, *Pinkerton*,[2] and conspiracy instructions to the jury.

## BACKGROUND

A federal grand jury returned a Superseding Indictment on March 17, 2022, charging the Defendants[3] with five counts in connection with their participation in a plan to unlawfully export guns and ammunition from the United States to Cameroon by way of Nigeria. (ECF No. 44.) Judge Blake of this Court held a ten-day jury trial beginning April 25, 2022, and the jury found each Defendant guilty of Conspiracy (18 U.S.C. § 371) (Count One), Transportation of Firearm with Obliterated Serial Number (18 U.S.C. § 922(k)) (Count Four), and Smuggling (18 U.S.C. § 554(a)) (Count Five). (ECF No. 108.) The Defendants were each

---

[2] In *Pinkerton v. United States*, the Supreme Court explained that the acts of one co-conspirator can be implicated upon another co-conspirator. 328 U.S. 640, 646 (1946). "The *Pinkerton* doctrine makes a person liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy." *United States v. Ashley*, 606 F.3d 135, 142–43 (4th Cir. 2010).

[3] Seven other Defendants were charged in seven separate cases related to the same underlying facts. *See United States v. Muma,* Criminal No. RDB-21-0194; *United States v. Ngang*, Criminal No. RDB-21-0195; *United States v. Bangarie*, Criminal No. RDB-21-0277; *United States v. St. Michael*, Criminal No. RDB-20-0015; *United States v. Akem*, Criminal No. RDB-20-0150; *United States v. Mancho*, Criminal No. RDB-21-0322; *United States v. Ngomanji*, Criminal No. RDB-21-0292. Each of those seven Defendants have pleaded guilty.

found not guilty of Violation of the Arms Export Control Act (22 U.S.C. § 2778) (Count Two) and Violation of the Export Control Reform Act (50 U.S.C. §§ 4819) (Count Three).

Prior to trial, Judge Blake held a hearing concerning the Government's motion (ECF No. 62) to exclude Defendants' expert witness, Efi Tembon. (ECF No. 82.) The Defendants proffered Mr. Tembon's testimony to detail ongoing conflict between the Cameroonian Government and Anglophone Cameroonians as an explanation for the Defendants' secretive behavior and involvement in shipping guns and ammunition abroad. (ECF No. 54.) Judge Blake granted the Government's motion on the record and excluded Mr. Tembon's testimony after finding that it was not relevant to the Defendants' state of mind defense.

During trial, Judge Blake excluded testimony from Tse Ernst Bangarie after Mr. Bangarie asserted his Fifth Amendment right to be free from self-incrimination. In making this determination, Judge Blake inquired with defense counsel the types of questions he intended to ask Mr. Bangarie, to which counsel replied that the questions concerned gun and ammunition licensing. Mr. Bangerie's counsel informed the Court that he would advise Mr. Bangerie to assert his Fifth Amendment privilege as to that information, and Judge Blake ruled exclusion was proper.

When giving jury instructions, Judge Blake administered the "willful blindness", *Pinkerton*, and conspiracy instructions, among others. The willful blindness instruction relating to Count Four (Transportation of Firearm with Obliterated Serial Number) read:

> In determining whether a defendant acted knowingly, you may consider whether the defendant deliberately closed his eyes to what would otherwise have been obvious to him. If you find beyond a reasonable doubt that the defendant act with (or that the defendant's ignorance was solely and entirely the result of) a conscious purpose to avoid learning the truth (that is, that the serial numbers were removed, obliterated, or altered), then this element may be

satisfied. However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish or mistaken.

If you find that the defendant was aware of a high probability that the serial numbers were removed, obliterated, or altered, and that the defendant acted with deliberate disregard of the facts, you may find that the defendant acted knowingly. However, if you find that the defendant actually did not know that the serial numbers were removed, obliterated, or altered, he may not be convicted.

It is entirely up to you whether you find that the defendant deliberately closed his eyes and what inferences if any should be drawn from the evidence on this issue.

1 Modern Federal Jury Instructions-Criminal P 3A-2 (2022). The *Pinkerton* instruction, which related to the relationship between Count One (Conspiracy) and the substantive counts, read:

There is another method by which you may evaluate the possible guilt of the defendant for the substantive charge in the Superseding Indictment of a violation of the Arms Export Control Act (Count Two), the Export Control Reform Act (Count Three), transportation of a firearm with an obliterated serial number (Count Four) and smuggling (Count Five) even if you do not find that the government has satisfied its burden of proof with respect to each element of one or more of those crimes.

If, in light of my instructions, you find, beyond a reasonable doubt, that a defendant was a member of the conspiracy charged in Count One of the Superseding Indictment, and thus, guilty on the conspiracy count, then you may also, but you are not required to, find him guilty of the substantive crimes charged in Counts Two, Three, Four, or Five, provided you find, beyond a reasonable doubt, each of the following elements when considering the offense charged in each of those Counts:

First, that the crime charged in the substantive count was committed;

Second, that the person or persons you find actually committed the crime were members of the conspiracy you found to have existed;

Third, that the substantive crime was committed pursuant to the common plan and understanding you found to exist among the conspirators;

Fourth, that the defendant was a member of that conspiracy at the time the substantive crime was committed;

Fifth, that the defendant could have reasonably foreseen that the substantive crime might be committed by his co-conspirators.

If you find all five of these elements to exist beyond a reasonable doubt, then you may find the defendant guilty of the substantive crime, even though he did not personally participate in the acts constituting the crime or did not have actual knowledge of it.

The reason for this rule is simply that a co-conspirator who commits a crime pursuant to a conspiracy is deemed to be the agent of the other conspirators. Therefore, all of the co-conspirators must bear criminal responsibility for the commission of the crimes committed by its members.

If, however, you are not satisfied as to the existence of any of these five elements, then you may not find the defendant guilty of the substantive crime, unless the government proves, beyond a reasonable doubt, that the defendant personally committed, or aided and abetted the commission of, that crime.

1 Modern Federal Jury Instructions-Criminal P 19.03 (2022). Before sending the jury to deliberation, Judge Blake informed the jurors of the required unanimity in finding a guilty verdict for the conspiracy charge:

Now your verdict must also be unanimous in another sense. For a moment I will refer back to one of the counts. Count One of the Superseding Indictment charges that the defendants committed the crime of Conspiracy in one or more ways, one or more objectives. The first is that they conspired to export and attempt to export from the United States items listed on the United States Munitions List without obtaining license from the Department of State. Second is that they conspired to export and attempt to export from the United States items on the Commerce Control List without obtaining a license from the Department of Commerce. The third is that they conspired to export and send and attempt to export and send from the United States firearms, ammunition, and rifle scopes, knowing those items were intended for exportation contrary to any law or regulation of the United States. And the fourth is that they conspired to transport, ship, and cause to be transported and shipped in foreign commerce, firearms which had the serial numbers removed and obliterated.

If the Government fails to prove that at least one of those four objectives was an objective of the conspiracy in which a defendant participated, then you must find that defendant not guilty on the Conspiracy count. On the other hand, the Government need not prove that all four were objectives of the conspiracy for

you to find the defendant guilty of the Conspiracy count. It's sufficient if you find beyond a reasonable doubt that the defendant agreed to commit one of the four objectives in order to convict the defendant on the Conspiracy count.

However, in order to convict a defendant on this count, Count One, all 12 of you must agree on the specific object that the defendant agreed to try to accomplish. So all of you must agree the defendant conspired to export and attempted to export from the United States items listed on the U.S. Munitions List without obtaining a license from the Department of State, or all of you must agree that the defendant conspired to export and attempted to export from the United States items on the Commerce Control List without obtaining a license from the Department of Commerce, or all of you must agree that the defendant conspired to export and send and attempt to export and send from the United States firearms, ammunition, and rifle scopes knowing these items were intended for exportation contrary to any law or regulation of the United States, or all of you must agree the defendant conspired to transport, ship and cause to be transported and shipped in foreign commerce firearms knowing that the serial numbers had been removed or obliterated.

1 Modern Federal Jury Instructions-Criminal P 9-7.1 (2022).

Since the conclusion of trial, the Defendants have filed post-trial motions (ECF Nos. 122, 123, 126)[4] seeking dismissal, acquittal, and/or a new trial. The Defendants principally argue that their convictions must be dismissed because the Supreme Court's decision in *Bruen* yields 18 U.S.C. § 922(k) (Count 4) unconstitutional. *Id.* Additionally, the Defendants argue that they must be acquitted of their charges or awarded a new trial because (1) the Government failed to provide substantial evidence upon which the jury could convict, (2) expert and witness testimony were improperly excluded, and (3) the Court administered improper jury instructions. *Id.* The Government contests each of these issues, particularly arguing that 18 U.S.C. § 922(k) (Count 4) is constitutional for various reasons, namely because it is outside of the Second Amendment's protection or is alternatively commercial in nature, and dismissal is

---

[4] The motions were originally filed individually, but all Defendants have since expressly adopted the arguments advanced in each motion. (ECF No. 122 at 7; ECF No. 139.)

therefore unwarranted. (ECF No. 143.) As to Defendants' acquittal and new trial arguments, the Government contends that it offered evidence sufficient for the jury to return a guilty verdict, that the expert and witness testimony were appropriately excluded, and that the jury instructions were properly administered. (ECF No. 144.)

## STANDARD OF REVIEW

### I.   Dismissal

Under Federal Rule of Criminal Procedure 12(b)(2), "a motion that the court lacks jurisdiction may be made at any time while the case is pending." Under Rule 12(b)(3)(B)(v), a defendant may move for dismissal for "failure to state an offense" before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."  Rule 34 states that "[u]pon the defendant's motion or on its own, the court must arrest judgment if the court does not have jurisdiction of the charged offense."

### II.   Acquittal and/or New Trial

Under Federal Rule of Criminal Procedure 29(c)(2), "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal." A guilty verdict should be sustained "if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by substantial evidence." *United States v. Burfoot*, 899 F.3d 326, 334 (4th Cir. 2018) (citing *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996))." Substantial evidence is that which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *Id.* (citing *Burgos*, 94 F.3d at 862). The United States Court of Appeals for the Fourth Circuit notes that it does not

"consider the credibility of witnesses and [] assume[s] the jury resolved all contradictions in testimony in the government's favor." *Burfoot*, 899 F.3d at 334.

Under Federal Rule of Criminal Procedure 33, by a defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." The defendant is to file a motion for a new trial within fourteen days after the verdict or finding of guilty. Fed. R. Crim. P. 33. A district court holds great authority to acquit on the ground of insufficient evidence and "is not constrained by the requirement that it view the evidence in the light most favorable to the government." *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). As a result, the court is able to evaluate the credibility of witnesses. *Id.* "When the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial." *Id.* "Nevertheless, the trial court's discretion should be exercised sparingly, and a new trial should be granted only when the evidence weighs heavily against the verdict." *Arrington*, 757 F.2d at 1486.

## ANALYSIS

### I.   Dismissal is Improper

Defendants assert that, under the updated Second Amendment framework enunciated by the Supreme Court in *Bruen*, 18 U.S.C. § 922(k) (Count 4) is effectively unconstitutional and therefore their convictions must be dismissed. (ECF Nos. 122, 123, 126.) The Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen* held that a New York law which predicated a person's right to carry a firearm on "proper cause" violated the protections of the Second Amendment. 142 S. Ct. 2111 (2022). In making that ruling, the Court struck down the widely- and oft-used two-step, means-end scrutiny approach in determining whether a law was

constitutional under the Second Amendment right to bear arms. The Supreme Court articulated:

> when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

*Bruen*, 142 S. Ct. at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)). The Government carries the burden in proving or analogizing that certain conduct was traditionally and historically regulated to justify any Second Amendment infringement. The Supreme Court clarified that "analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin." *Bruen*, 142 S. Ct. at 2133.

In the aftermath of the *Bruen* decision, three United States District Courts have analyzed 18 U.S.C. § 922(k)'s constitutionality. The United States District Court for the Southern District of West Virginia found 18 U.S.C. § 922(k) unconstitutional under *Bruen* because the statute is a "blatant prohibition on possession" that "falls squarely within the Second Amendment's plain text." *United States v. Price*, No. 2:22-CR-00097, 2022 WL 6968457, at *3 (S.D.W. Va. Oct. 12, 2022). After deeming the statute presumptively invalid, the *Price* court found that the Government could not analogize the regulation to the Nation's history because serial numbers were only recently created to combat crime. *Id.* at *5. That court found "the "societal problem[s]" addressed by Section 922(k) appear to be crime, including crime involving stolen firearms, and assisting law enforcement in solving crime. It is difficult to

imagine that this societal problem did not exist at the founding." *Id.* at *6. The court further reasoned that "Section 922(k) is not a commercial regulation because it criminalizes possession even after a firearm is out of the stream of commerce. Evidence of historical commercial regulations is therefore inapposite." *Id.*

Conversely, the United States District Court for the Northern District of Texas rejected the analysis by the *Price* Court and held 18 U.S.C. § 922(k) constitutional under *Bruen* as it found that "[w]hile § 922(k) may restrict one manner in which individuals may keep and carry firearms, this restriction does not infringe on an individual's right to bear arms for self-defense." *United States v. Holton*, No. 3:21-CR-0482-B, 2022 WL 16701935, at *4 (N.D. Tex. Nov. 3, 2022). As a result, the court determined that 18 U.S.C. § 922(k) is outside of the Second Amendment's ambit. *Id.* The *Holton* court criticized the *Price* court's holding, stating "between the *Price* court's expansive interpretation of 'possession' and its rigid interpretation of history, it is hard to imagine what gun laws would not fall within Second Amendment protection." *Id.* at *5.

Similarly, the United States District Court for the Northern District of Indiana found that possession of guns with obliterated serial numbers is not within the scope of the Second Amendment protections. *United States v. Jose Reyna*, No. 3:21-CR-41 RLM-MGG, 2022 WL 17714376, at *5 (N.D. Ind. Dec. 15, 2022). The *Reyna* court reasoned that under *District of Columbia v. Heller*, 554 U.S. 570 (2008), guns "with obliterated serial numbers belong to 'those weapons not typically possessed by law-abiding citizens for lawful purposes' so possession of such guns isn't within the Second Amendment's scope." *Reyna*, 2022 WL 17714376, at *5 (quoting *Heller*, 554 U.S. at 625).

As an initial matter, the Government argues that the Defendants' Motions under Federal Rule of Criminal Procedure 12 are untimely because they were not brought before trial and the arguments are therefore waived. (ECF No. 143 at 1.) In other words, the Government asserts that the Defendants could have made *Bruen*-like arguments prior to trial because the *Bruen* case was argued before the Supreme Court in November 2021. *Id.* at 5. The Court rejects this argument. The *Bruen* case was not decided until two months after the initiation of trial in this case. The Defendants could not have anticipated the Supreme Court's ruling or rationale. The Defendants' Motions are timely.

Turning to the merits, the Court must first determine whether the Second Amendment reaches the conduct delineated in 18 U.S.C. § 922(k). The Second Amendment to the United States Constitution states that a "well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. As previously explained by the Supreme Court, the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). In other words, "individual self-defense is 'the central component' of the Second Amendment right." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010) (quoting *Heller*, 554 U.S. at 599). A law is within the realm of the Second Amendment if it imposes a burden on "a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S. Ct. at 2133. The Second Amendment is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626.

The statute at issue, 18 U.S.C. § 922(k), makes it unlawful:

> for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

The Defendants argue that the Second Amendment protections are implicated in the transfer of firearms, and the right to bear arms "would be meaningless if it did not also include the right to obtain or transfer firearms." (ECF No. 123 at 5.) Conversely, the Government argues that the Second Amendment "protects the right of individuals to 'keep and bear' arms, not export them" nor is the right infringed by requiring serial numbers on guns; therefore, the right does not reach the activity deemed unlawful in 18 U.S.C. § 922(k). (ECF No. 143 at 2.)

This Court finds the conduct outlined in 18 U.S.C. § 922(k) is not protected by the Second Amendment because it does not infringe on an individual's right to bear arms "in case of confrontation" or self-defense. The *Holton* and *Reyna* cases rest on sound analyses and are instructive. As expressed in *Holton*, "[w]hile § 922(k) may restrict one manner in which individuals may keep and carry firearms, this restriction does not infringe on an individual's right to bear arms for self-defense." 2022 WL 16701935, at *4. A serial number is a "nonfunctional characteristic" of a gun. *Reyna*, 2022 WL 17714376, at *5. As highlighted, "firearms of similar make and model are essentially fungible" and requiring a serial number does not impede on one's ability to appropriately use a gun for self-defense. *Holton*, 2022 WL 16701935, at *4. Consequently, transporting or possessing a gun with an obliterated serial number is outside the Second Amendment's scope, and 18 U.S.C. § 922(k) is therefore not unconstitutional on this basis.

Alternatively, even if transport and possession of guns with obliterated serial numbers are deemed to be within the Second Amendment's ambit, analogous conduct has been historically regulated such that 18 U.S.C. § 922(k) is constitutional. Contrary to the analysis in *Price*, this Court declines to narrow its historical analysis to laws solely concerning serial numbers. As the Government aptly notes, "governments have been regulating the sale, possession, and transfer of firearms" since the Founding Era. (ECF No. 143 at 2.) Though not a "historical twin", the Government has sufficiently advanced a "representative historical analogue." *Bruen*, 142 S. Ct. at 2133 ("So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.").

The Government has offered evidence that "[s]cholars have noted that many of the colonies enacted laws regarding the registration of firearms as part of legislative schemes regarding the sale, transfer, and taxation of firearms." *Id.* at 12. The Government notes laws from the 17th Century in New York, Virginia,[5] and Connecticut regulated trading and selling firearms outside of each respective colony. *Id.* States continued to regulate the manufacture, sale, and transport of guns and ammunition in the 18th and 19th centuries, notably in Massachusetts and New Hampshire where guns and storage facilities had to be inspected. *Id.* at 13. The Government contends that these laws are "are historical analogues to the current serial number requirement and anti-smuggling provisions, which are necessary to, and in aid of, modern legislative schemes regulating the commercial sale of firearms." (ECF No. 143 at

---

[5] In the 17th Century, West Virginia was still part of Virginia, and that region was therefore bound by the state of Virginia laws. West Virginia, https://www.newworldencyclopedia.org/p/index.php?title=West_Virginia&oldid=1088382 (last visited December 21, 2022).

13.) That there were no serial numbers during the Founding Era is a distinction without a difference. *Id.*

The Defendants flatly disagree that the transport and possession of guns with obliterated serial numbers is a commercial regulation, but nonetheless contend that any laws regulating commercial behavior were civil in nature and did not hold any criminal fines as in 18 U.S.C. § 922(k). (ECF No. 147 at 6.) Defendants' argument is belied by colonial laws which made it a felony to sell or give firearms to Native Americans. In *Teixeira v. Cnty. of Alameda*, the United States Court of Appeals for the Ninth Circuit provided historical background on colonial government regulation that placed restrictions on the commercial sale of firearms. 873 F.3d 670, 685 (9th Cir. 2017). In reviewing this history, the Ninth Circuit expressly mentioned that Maryland and Virginia, among other colonies, "passed laws in the first half of the seventeenth century making it a crime to sell, give, or otherwise deliver firearms or ammunition to Indians." *Id.* (citing *cts of Assembly, Mar. 1657-8*, *in* 1 William Waller Hening, *The Statutes at Large: Being a Collection of All the Laws of Virginia, from the First Session of the Legislature, in the Year 1619*, at 441 (1823); *Assembly Proceedings, February-March 1638/9*, *in Proceedings and Acts of the General Assembly of Maryland, January 1637/8—September 1664*, at 103 (William Hand Browne, ed., 1883)).[6] Such laws emphasize our Nation's history in regulating the transfer and sale of firearms, and are analogous, if not antecedents, to 18 U.S.C. § 922(k). Accordingly, 18 U.S.C. § 922(k) is historically justified and not unconstitutional under the

---

[6] In Maryland, it was a crime "to sell give or deliver to any Indian or to any other declared or professed enemic [sic] of the Province any gunne [sic] pistol powder or shott [sic] without the knowledge or lycence [sic] of the Leiutenant Generall [sic]." *Assembly Proceedings, February-March 1638/9, in Proceedings and Acts of the General Assembly of Maryland, January 1637/8—September 1664*, at 103 (William Hand Browne, ed., 1883).

Second Amendment. Defendants' parts of their Motions (ECF No. 122, 123, and 126) that seek dismissal on this basis are DENIED.

## II.    Acquittal and/or New Trial are Unwarranted

The Defendants unsuccessfully argue that acquittal or a new trial is warranted under various avenues. Each contention is addressed in turn.

### a.    Evidence

The Defendants argue that there was insufficient evidence for the jury to base a guilty verdict on Count 4 because the Government did not prove "that any of the firearms were capable of expelling a projectile by the action of an explosive." (ECF No. 122-1 at 1-2.) The Defendants additionally argue that the Government failed to establish the requisite *mens rea*, or that the Defendants otherwise had knowledge that the serial numbers were obliterated, for a guilty verdict on Count 4. (ECF No. 126 at 6-8.)

There is substantial evidence to support the Defendants' Count 4 guilty verdicts. First, the Government aptly notes that it "need not prove that a gun is capable of firing projectile or operable to qualify as a firearm under 18 U.S.C. § 922(a)(3)." (ECF No. 144 at 14); *see United States v. Willis*, 992 F.2d 489, 491 n.2 (4th Cir. 1993) (need not prove that a gun is operable, but instead that it was designed to expel a projectile). Instead, the Government presented many of the actual guns at trial and placed them on a table directly in front of the jury to visually inspect. *Id.* at 16. There were also photographs of each of the seized weapons, and testimony by multiple witnesses, including various special agents that identified the particular make and model of multiple guns. *Id.* at 16-18. Accordingly, the Government presented evidence sufficient for a jury to infer that the guns were firearms. *Id.*

15

Additionally, the Government introduced testimony from three co-conspirators, Tamufor St. Michael, Roger Akem and Walters Muma, that testified as to the Defendants' involvement in the conspiracy and knowledge as to the obliterated serial numbers. (ECF No. 144 at 4.) Co-conspirator Muma testified that he obliterated the serial numbers in a small basement with a loud machine that was audible for all in the room, including the Defendants, to hear. *Id.* at 9. He also testified that he wore gloves and goggles while obliterating the serial numbers which were visible to all the Defendants. *Id.* The Government additionally introduced WhatsApp group chat messages which "contained records of meetings, discussions and plans regarding concerns for secrecy, the use of code words, the raising of funds among themselves to buy more weapons and ammunition, and the need for the conspirators to come to the basement to assist with the 'concealment' work and to load the shipping container." *Id.* at 5. Further, the Government introduced a document prepared by Defendant Tita entitled "Peanut Project Membership Bylaws" which addressed the group's desire for secrecy and its "concealment method." *Id.* at 7-8. For these reasons and those expressed on the record, the Government provided sufficient evidence for a jury to conclude that the Defendants had the requisite *mens rea* in finding them guilty of Count 4.

b.  <u>Witness Testimony</u>

The Defendants argue that the Court erred in excluding expert testimony from Efi Tembon and from excluding witness testimony from co-conspirator Tse Ernst Bangarie. As an initial matter the trial judge has discretion to exclude evidence if it is not relevant or otherwise has the potential to be unfairly prejudicial, confuse issues, mislead the jury, cause undue delay, waste time, or needlessly present cumulative evidence. Fed. R. Evid. 402, 403. If

testimony is improperly excluded, acquittal and/or new trial is improper where it is harmless error. When a court errs in excluding testimony, that error is harmless where it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *United States v. Sayles*, 296 F.3d 219, 223 (4th Cir. 2002) (quoting *Neder v. United States*, 527 U.S. 1 (1999)) (internal quotations omitted).

        *i.   Efi Tembon*

        Judge Blake excluded testimony from Mr. Tembon because "general discussion of atrocities in Cameroon" was not relevant for its proffered purpose – the Defendants' state of mind. An expert witness may testify if, among other requirements, the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "The exclusion of expert testimony under Rule 702 is within the sound discretion of the trial judge." *United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993) (citing *Sparks v. Gilley Trucking Co.*, 992 F.2d 50, 53 n. 3 (4th Cir.1993)).

        Judge Blake applied sound discretion in excluding Mr. Tembon's testimony. The Government appropriately highlights that "the exclusion of the expert's testimony did not preclude the defendants from presenting to the jury evidence of the violence in Cameroon and their fear of retribution." *Id.* For example, Mr. Muma testified on several occasions that the purpose of sending guns and ammunition to Cameroon was to help the people defend themselves in a war against the Cameroonian Government. Similarly, St. Michael and Roger Akem also testified about the ongoing violence in Cameroon. Further, Defendant Fonguh and Defendant Nji testified about the conflict in Cameroon. *Id.* at 28. Ultimately, the Defendants were still able to, and did, offer evidence about the conflict in Cameroon. Therefore, exclusion

of Mr. Tembon's testimony was appropriate.

### ii. Tse Ernst Bangarie

The Court also excluded Defendants' proposed testimony from co-conspirator Tse Ernst Bangarie after Mr. Bangarie asserted his Fifth Amendment right. "The Sixth Amendment grants a defendant the right to compel testimony by witnesses in his defense. When a defendant's right to compel testimony conflicts with a witness' privilege against self-incrimination, however, a court must 'make a proper and particularized inquiry into the legitimacy and scope of the witness' assertion of the privilege.'" *United States v. Sayles*, 296 F.3d 219, 223 (4th Cir. 2002) (quoting *Gaskins v. McKellar*, 916 F.2d 941, 950 (4th Cir. 1990)). "A court can excuse a witness from testifying 'only if the court finds that [the witness] could legitimately refuse to answer any and all relevant questions.'" *Id.* (quoting *Gaskins*, 916 F.2d at 950).

Judge Blake underwent the proper particularized inquiry and determined that Mr. Bangarie would assert his Fifth Amendment right to all questions asked by counsel at trial. Mr. Bangarie had entered a plea deal, but had not yet been sentenced during the time of this trial. Furthermore, as noted by the Government, Bangarie's testimony that the Defendants wished to admit would not have been any more influential to the verdict because it related to licensing requirements relevant to the charges of shipping items, of which the Defendants were acquitted. (ECF No. 144 at 21.)

Defendants' alternative argument that Mr. Bangerie's testimony should have been admitted under Federal Rule of Evidence 807 is similarly unsuccessful because Mr. Bangerie's statement was made at a proffer session and was not accepted by the Government or

incorporated into his plea agreement. Accordingly, there is no indicia of trustworthiness or reliability necessary for admittance under Rule 807. Fed. R. Evid. 807 ("the statement is supported by sufficient guarantees of trustworthiness").

> c. <u>Jury Instructions</u>

"[A] trial court has broad discretion in framing its instructions to a jury." *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 484 (4th Cir. 2007). "Instructions will be considered adequate if construed as a whole, and in light of the whole record, they adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the [objecting] party." *Bunn v. Oldendorff Carriers GmbH & Co. KG*, 723 F.3d 454, 468 (4th Cir. 2013) (quotation omitted). "Even if a jury was erroneously instructed, however, we will not set aside a resulting verdict unless the erroneous instruction seriously prejudiced the challenging party's case." *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 233 (4th Cir. 2016) (quoting *Bunn*, 723 F.3d at 468) (internal quotations omitted).

> i. *Willful Blindness*

"It is well established that where a defendant asserts that he did not have the requisite *mens rea* to meet the elements of the crime but evidence supports an inference of deliberate ignorance, a willful blindness instruction to the jury is appropriate." *United States v. Ali*, 735 F.3d 176, 187 (4th Cir. 2013) (internal quotations and citations omitted). A willful blindness instruction must be exercised cautiously and is appropriate in rare circumstances. *Id.*

Here, the Defendants asserted that they lacked the requisite *mens rea* for guilt under Count 4. As previously explained, the Defendants' defense rested on their alleged lack of

knowledge, and the Government presented sufficient evidence to the jury to establish *mens rea*, thereby substantiating administration of the "willful blindness" instruction. The nature of the conspiracy, notably the constant mention of the need for secrecy, indicated that there was a high probability that the Defendants knew information that reflected the origin of the guns would be removed. (ECF No. 144 at 9-10.) Further, the Government presented evidence showing that the Defendants were consistently in Muma's presence, yet Defendant Nji and Defendant Fonguh testified that they "never discussed with Mr. Muma the nature of the work he was doing in the lab." *Id.* at 11. Thus, as properly stated by the Government, "[u]nder these circumstances, a reasonable juror certainly could conclude that the fact that the defendants did not once question Mr. Muma as to what he was working on, or why he wore goggles and gloves, or about the noise generated by the grinding machine constituted deliberate actions to avoid learning about the obliterated serial numbers." *Id.* Therefore, a willful blindness jury instruction was appropriate.

    *ii. Pinkerton*

    A *Pinkerton* jury instruction explains that a defendant is "liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy." *United States v. Ashley*, 606 F.3d 135, 142-43 (4th Cir. 2010), *cert. denied*, 562 U.S. 987 (2010). As the Government notes, and as explained on the record, "[b]ecause the evidence showed that the aims of the conspiracy were to avoid detection and ensure that the items could not be traced back to the conspirators, it was reasonably foreseeable that the serial numbers would be obliterated so that the authorities could not track the source of the guns if they were discovered in the shipping container or on the ground in

Cameroon." (ECF No. 144 at 9-10.) Thus, because there was sufficient evidence for the jury to find the Defendants guilty of the substantive charges, the *Pinkerton* instruction was proper.

       *iii.   Conspiracy*

The Defendants argue that the jury should have been instructed that they were to be unanimous in finding the Defendants committed one or more of the charged overt acts. (ECF No. 122-1 at 5.) The Defendants argument is misplaced. Judge Blake's instruction clearly states that all twelve of the jurors had to agree on the specific object that the Defendant(s) tried to accomplish. There is plainly no perceived error to analyze.

For the reasons explained on the record and reiterated above, Defendants' parts of their Motions (ECF No. 122, 123, and 126) that seek acquittal and/or new trial are DENIED.

## CONCLUSION

Accordingly, Defendants' post-trial Motions (ECF Nos. 122, 123, 126) are DENIED. A separate Order follows.

                                  _____/s/_____

                                  Richard D. Bennett
                                  United States District Judge